DONALD M. MOSLEY, PETITIONER, *v.* NEVADA COMMISSION ON JUDICIAL DISCIPLINE, RESPONDENT.

No. 36775

May 17, 2001                                        22 P.3d 655

---

*Galatz Earl & Associates,* Las Vegas, for Petitioner.

*Sinai Schroeder Mooney Boetsch Bradley & Pace,* Reno, for Respondent.

*Gillock Markley & Killebrew,* Las Vegas, for Amici Curiae District Judges Ritchie, Voy and Del Vecchio.

*Wolfson & Glass,* Las Vegas, for Amici Curiae District Judges Porter, Douglas and Mahan.

*Curran & Parry,* Las Vegas, for Amici Curiae District Judges Kathy Hardcastle and Huffaker.

*Richard Segerblom,* Las Vegas, for Amici Curiae District Judges Denton and Cherry.

*Mainor & Harris,* Las Vegas, for Amici Curiae District Judges Bonaventure and Mark Gibbons.

## OPINION

By the Court, MAUPIN, C. J.:

The Nevada Commission on Judicial Discipline ("the Commission") is charged by the Nevada Constitution to investigate, prosecute, and adjudicate allegations of judicial misconduct.[1] The petitioner in this matter, Donald M. Mosley ("Judge Mosley"), is a Nevada district court judge against whom the Commission is currently conducting disciplinary proceedings. Judge Mosley asks us to terminate these proceedings, claiming that the Commission has violated his state and federal due process

---

[1]*See* Nev. Const. art. 6, § 21.

Following our decisions in *Whitehead v. Comm'n on Jud. Discipline,* 110 Nev. 128, 906 P.2d 230 (1994) ("*Whitehead I*"); *Whitehead v. Comm'n on Jud. Discipline,* 110 Nev. 380, 873 P.2d 946 (1994) ("*Whitehead II*"); *Whitehead v. Comm'n on Jud. Discipline,* 110 Nev. 874, 878 P.2d 913 (1994) ("*Whitehead III*"); *Whitehead v. Comm'n on Jud. Discipline,* 111 Nev. 70, 893 P.2d 866 (1995) ("*Whitehead IV*") (*see infra*), the 1995 and 1997 Nevada legislatures passed resolutions to amend article 6, section 21 of the Nevada Constitution. *See* A.J.R. 33, 68th Leg. (1995); A.J.R. 35, 69th Leg. (1997). The people of Nevada approved and ratified this amendment at the 1998 general election.

Prior to amendment, article 6, section 21 vested power in this court to make rules delineating the grounds of discipline that the Commission may impose and governing the confidentiality of Commission proceedings. *See* former Nev. Const. art. 6, § 21(5)(a)-(b). In addition, former section 21(c)(5) required this court to make rules for the conduct of Commission investigations and hearings.

The 1998 amendment removed these powers from this court. Now, the constitution requires the legislature to establish the grounds for disciplinary actions that the Commission may impose, the standards for the Commission's investigations, and the confidentiality of its proceedings. Nev. Const. art. 6, § 21(5)(b)-(d). The Commission itself is now empowered to adopt its own procedural rules "for the conduct of its hearings and any other procedural rules it deems necessary to carry out its duties." Nev. Const. art. 6, § 21(7).

rights, and that the Commission has violated certain provisions of the Nevada Constitution and the statutory construct enacted pursuant to the constitutional mandate.

## FACTS

Michael Mosley was born on February 15, 1992, the son of Judge Mosley and Ms. Terry Figliuzzi.[2] Continuing disputes over Michael's custody have been protracted and particularly contentious. Following a trial, the district court terminated joint custody and awarded sole custody of Michael to Ms. Figliuzzi.[3] On appeal, we reversed this judgment and remanded the matter.[4] On remand, the district court reinstated joint custody. Based upon alleged interactions with witnesses in the custody proceedings, Judge Mosley stands accused of violating several canons of the Nevada Code of Judicial Conduct.

On April 24, 1999, the *Las Vegas Review-Journal* published an article alleging that Judge Mosley used his judicial office to secure testimony favorable to him in the custody dispute. Specifically, the article indicated that Judge Mosley agreed to show leniency in the sentencing of a defendant in a felony criminal proceeding in exchange for testimony that Ms. Figliuzzi was an unfit mother. The defendant and his spouse lived briefly with Ms. Figliuzzi and Michael.

The article came to the attention of Leonard Gang, the former executive director and general counsel of the Commission. Pursuant to his authority as executive director, Gang filed a statement of complaint with the Commission on April 26, 1999, requesting that the Commission investigate allegations of misconduct taken from the article.[5] The Commission reviewed the complaint and authorized an investigation.[6]

---

[2]*See Mosley v. Figliuzzi,* 113 Nev. 51, 53, 930 P.2d 1110, 1111 (1997).

[3]*Id.*

[4]*Id.* at 69, 930 P.2d at 1121.

[5]See the Procedural Rules of the Nevada Commission on Judicial Discipline ("CPR") 10(2):

> A complaint may be initiated by information in any form from any source received by the commission that alleges or from which a reasonable inference can be drawn that a judge committed misconduct or is incapacitated. If there is no written complaint from another person, the Executive Director of the commission may file a complaint.

See also Nev. Const. art. 6, § 21(9), which provides that "[a]ny matter relating to the fitness of a justice or judge may be brought to the attention of the commission by any person or on the motion of the commission."

[6]*See* CPR 11-12; *see also* NRS 1.4663 (providing that, if the Commission determines that the complaint states allegations which, if true, establish grounds for discipline, the Commission must authorize an investigation of the charges).

On August 13, 1999, the *Las Vegas Review-Journal* published another article charging that Judge Mosley released a criminal defendant named Robert D'Amore on his own recognizance at the request of a longtime friend, Barbara Orcutt. Orcutt testified on Judge Mosley's behalf at one of the custody hearings.

Thereafter, on September 7, 1999, Gang submitted a second statement of complaint to the Commission. In addition to describing the facts alleged in the August 13, 1999, news article, Gang submitted, with this second complaint, copies of two letters written by Judge Mosley on his official stationery. The letters were directed to Michael's elementary school principals and requested that they prevent Ms. Figliuzzi from visiting Michael at his school.

Based upon preliminary evidence, the Commission found sufficient probable cause to authorize formal disciplinary hearings on both complaints. A finding of probable cause means the Commission has determined that there is a reasonable probability that evidence available for introduction at a formal hearing may clearly and convincingly establish grounds for disciplinary action.[7] Following the probable cause determination, Gang secured the services of a special prosecutor, who filed a formal statement of charges pursuant to NRS 1.467(3)(a).[8] The formal complaint essentially reiterates the allegations contained in the earlier statements of complaint.

Judge Mosley answered the charges and submitted a motion to dismiss for determination by the Commission. In this motion, Judge Mosley assigned constitutional and statutory error to the Commission's proceedings. The Commission considered this motion at a public hearing and denied it. Judge Mosley filed the instant petition with this court for extraordinary relief.

## DISCUSSION

### Standard of review

The parties do not contest this court's jurisdiction to afford interlocutory review. Although the current rules governing Commission procedure do not provide for review of interlocutory

---

[7]*See* CPR 13(1); *see also* NRS 1.467(1).

[8]NRS 1.467(3)(a) states in part:

> 3.   If the commission makes a finding that such a reasonable probability does exist, the commission shall, in accordance with its procedural rules:
>
> (a) Designate a prosecuting attorney, who must sign under oath a formal statement of charges against the justice or judge and file the statement with the commission.

orders,[9] we are empowered to provide extraordinary relief with regard to Commission proceedings.[10]

■■■■■■

A writ of mandamus is available to compel the performance of an act that the law requires as a duty resulting from an office, trust or station,[11] or to control an arbitrary or capricious exercise of discretion.[12] The writ will not issue, however, if the petitioner has a plain, speedy and adequate remedy in the ordinary course of law.[13] Further, a writ of mandamus is an extraordinary remedy, and it is within the discretion of this court to determine if a petition will be considered.[14] In *Smith v. District Court*,[15] this court explained that it will not exercise its discretion to consider a petition for a writ of mandamus challenging an order denying a motion to dismiss unless considerations of sound judicial economy and administration militate in favor of granting relief. In addition, this court may exercise its discretion to grant a petition challenging such an order when an important issue of law requires clarification.[16]

Judge Mosley requests that we direct the Commission to terminate the ongoing disciplinary proceedings against him. Because we conclude that two of his claims raise important constitutional issues, we consider them below. We decline to exercise our discretion with regard to the remaining contentions.

## *Combination of functions*

■■■■■■

The United States Supreme Court observed in *In re Murchison*[17] that "a fair trial in a fair tribunal is a basic requirement of due

---

[9]*Cf.* former ARJD 40(7) (expressly allowing review of interlocutory Commission orders via extraordinary writ).

[10]*See Whitehead I,* 110 Nev. at 150-51, 161, 906 P.2d at 243-44, 250-51; *Whitehead II,* 110 Nev. at 408, 873 P.2d at 964 ("[T]his court has the power under the Nevada Constitution to intervene in Commission proceedings by way of an extraordinary writ in appropriate circumstances. *See* Nev. Const. art. 6, § 4 (supreme court shall have power to issue writs of *mandamus, certiorari,* prohibition, *quo warranto,* and *habeas corpus*).").

[11]*See* NRS 34.160.

[12]*See Round Hill Gen. Imp. Dist. v. Newman,* 97 Nev. 601, 637 P.2d 534 (1981).

[13]*See* NRS 34.170; NRS 34.330.

[14]*See State ex rel. Dep't Transp. v. Thompson,* 99 Nev. 358, 662 P.2d 1338 (1983).

[15]113 Nev. 1343, 1344, 950 P.2d 280, 281 (1997).

[16]*Id.* at 1345, 950 P.2d at 281.

[17]349 U.S. 133, 136 (1955).

process." An adjudicator's actual bias against a party is constitutionally unacceptable and, in some situations, an implied probability of bias constitutes a deprivation of due process.[18] In this case, Judge Mosley contends that the Commission's investigative, prosecutorial, and adjudicative functions have combined to deprive him of his right to due process.

Under the Fourteenth Amendment of the Federal Constitution, no state shall "deprive any person of life, liberty, or property, without due process of law."[19] As a predicate to determining whether a due process violation has occurred, we must first conclude that the contested state action impinges upon an interest in life, liberty, or property. Accordingly, we must first decide whether the interest at stake in this proceeding—namely, a commissioned judgeship—is constitutionally protected.

While this court has never expressly held that state district court judges have property or liberty interests in their positions, we have implied that such is the case.[20] The majority of courts that have addressed the question have concluded that judges do possess such interests, especially when, as here, they serve for designated terms and have a continued expectation of office.[21] We approve of this authority and conclude that commissioned judges in this state have a protected interest in their judicial offices under the Fourteenth Amendment.

We now consider whether the Commission's procedures withstand constitutional scrutiny. Judge Mosley urges us to conclude that the Commission's combination of functions is implicitly prejudicial to judges brought within the disciplinary process, thereby violating important due process rights. He cites language from *Whitehead III,* in which this court observed that "the Judicial Discipline Commission is not just another administrative agency which can combine investigative, prosecutorial and judging functions. As this court held in *Whitehead I,* the Commission is a court of judicial performance, created by the Nevada Constitution as a part of the judicial branch of government."[22]

---

[18]*Withrow v. Larkin,* 421 U.S. 35, 47 (1975) (citing *Murchison,* 349 U.S. at 136).

[19]U.S. Const. amend. XIV.

[20]*See Whitehead IV,* 111 Nev. 70, 893 P.2d 866 (1995) (granting of extraordinary relief to petitioner was premised in part upon the theory that the Commission proceedings at issue deprived petitioner of due process).

[21]See Jeffrey M. Shaman et al., *Judicial Conduct and Ethics* § 13.09, at 454 (3d ed. 2000), and cases collected therein.

[22]*Whitehead III,* 110 Nev. 874, 882 n.7, 878 P.2d 913, 918 n.7 (1994).

We conclude that the language upon which Judge Mosley relies is not controlling. *Whitehead III* addressed the question of commingling functions in light of its determination that former NRS 1.450(2)[23] did not allow the Commission to employ the state attorney general as special counsel.[24] It reached this conclusion pursuant to the Nevada Constitution's express separation-of-powers doctrine[25] and disposed of the case on these grounds. The court did not address the question of whether any combination of functions inherently violated due process.

Further, as noted in the margin above, the legislature successfully obtained an amendment to the Nevada Constitution's provisions governing judicial discipline in this state. Among other provisions, the procedural framework established after the four *Whitehead* decisions were handed down expressly requires the Commission to "assign or appoint an investigator to conduct an investigation to determine whether the allegations [against a judge] have merit."[26] In addition, NRS 1.467(3)(a) provides that once the Commission makes the threshold probable cause determination, the Commission must then "[d]esignate a prosecuting attorney" to act in a formal disciplinary hearing. It seems clear then that the legislative intent manifested in the amendment process is that, although a "court of judicial performance," the Commission may exercise, to a degree, a combination of investigative, prosecutorial and adjudicative functions. Thus, having determined that the Nevada State Constitution contemplates a judicial discipline commission with combined functions, we turn to the issue of whether that combination violates Judge Mosley's rights of due process.

We are persuaded that this case is governed by the United States Supreme Court's decision in *Withrow v. Larkin*,[27] which held that the combination of prosecutorial, investigative, and adjudicative functions does not by itself violate due process. Although the Court's ruling concerned an administrative agency and not, as here, a court of judicial performance, we conclude that *Withrow* is otherwise indistinguishable and therefore dispositive.

In *Withrow,* a licensed physician challenged the constitutionality of the Wisconsin Medical Examining Board, claiming that its combined investigative and adjudicative functions implicitly

---

[23]Former NRS 1.450(2) commanded the attorney general to act as counsel "upon request" of the Commission.

[24]*Whitehead III,* 110 Nev. at 881-82, 878 P.2d at 918.

[25]*See* Nev. Const. art. 3, § 1(1).

[26]NRS 1.4663(1).

[27]421 U.S. 35 (1975).

biased the adjudicators and therefore violated due process. Wisconsin law invested the board with the power to warn and reprimand, suspend physicians' licenses, and institute criminal action or action to revoke licenses after finding probable cause to proceed with discipline.[28] The Wisconsin Medical Examining Board was further empowered to investigate, adjudicate, and "act upon" alleged instances of physician misconduct.[29]

The Court in *Withrow* held that a combination of functions did not per se violate the Constitution. The procedures and powers exercised by the medical board in *Withrow* and the Commission in this case are virtually identical. Both hire outside counsel to investigate charges, bifurcate probable cause determinations and adjudications on the merits, and permit hearings. The powers to discipline in both instances include more than mere recommendations; the powers in both instances include censure, suspension and removal. Certainly, a physician duly trained and licensed by state authority should enjoy no less protection than a commissioned judicial officer.

The *Withrow* court also aptly draws an analogy to contempt proceedings. It observed that no authority stands for the principle "that a judge before whom an alleged contempt is committed may not bring and preside over the ensuing contempt proceedings. The accepted rule is to the contrary."[30] Thus, the Court implicitly acknowledged that, even with regard to judicial proceedings, a combination of adjudicative and prosecutorial functions is not biased per se and does not, without more, violate due process.

This court agreed in *Matter of Davis,*[31] which held in part that the Commission's combined duties of determining probable cause and adjudicating the merits of a complaint against a judge did not violate due process. In *Davis,* the court quoted *Withrow's* recognition that constitutional due process does not bar a judge from making a preliminary determination of probable cause and then presiding over a criminal trial.[32] The court based its ultimate conclusion on language in *Withrow* (that the commissioners' dual responsibility to determine probable cause and sit in judgment did not violate due process).

We conclude that Judge Mosley has failed to demonstrate that the commingling of functions in this case poses a risk of actual

---

[28]*Withrow,* 421 U.S. at 37.

[29]*Id.* at 38 n.1.

[30]*Id.* at 53-54 (citing *Ungar v. Sarafite,* 376 U.S. 575, 584-85 (1964) (upholding due process challenge to contempt proceeding); *see also Nilva v. United States,* 352 U.S. 385, 395-96 (1957) (same)).

[31]113 Nev. 1204, 946 P.2d 1033 (1997).

[32]*Id.* at 1218, 946 P.2d at 1042 (quoting *Withrow,* 421 U.S. at 56).

bias. *Withrow* provided that, to demonstrate such a risk, aggrieved parties must first overcome a presumption that the adjudicators are honest. Second, complainants must demonstrate that "under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented."[33]

Judge Mosley offers no evidence suggesting that the Commission members are dishonest, biased, or prejudiced in any manner. Instead, he offers generalized allegations that Gang's ongoing involvement in this case presents a likelihood that the Commission's proceedings are slanted against him. We conclude on this record that Judge Mosley has failed to overcome the presumption that the commissioners are unbiased. We note in this regard that Gang is now retired from his positions with the Commission. In addition, we cannot conclude that under any appraisal of "psychological tendencies and human weaknesses," the Commission's combination of functions poses a risk of actual bias requiring our intervention.

Without a showing to the contrary, state adjudicators " 'are assumed to be [people] of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.' "[34] Because Judge Mosley has failed to overcome this assumption and because there is no reason to believe that the Commission's structure poses any risk of bias, we conclude that Judge Mosley's rights to due process have not been infringed.

*Appointment of alternate commissioners*

Judge Mosley challenges the composition of the Commission in his case because the Nevada State Bar Board of Governors ("the State Bar") improperly delegated the appointment of two alternate delegates to the executive director of the Commission. We agree that the appointments were improperly delegated.

On February 10, 2000, upon learning of the Commission's investigation of Judge Mosley, James Beasley, a permanent member of the Commission, voluntarily recused himself from the subject disciplinary proceedings because he had at one time acted as Ms. Figliuzzi's attorney. Later, after the Commission formally determined that reasonable probability existed in this case to war-

---

[33]*Withrow,* 421 U.S. at 47.

[34]*Id.* at 54 (quoting *United States v. Morgan,* 313 U.S. 409, 421 (1941)).

rant prosecution of the charges against Judge Mosley, Donald Campbell, another permanent commissioner, recalled a prior but brief contact with Ms. Figliuzzi regarding the Mosley-Figliuzzi domestic-relations lawsuit and also voluntarily disqualified himself from further proceedings.

Commissioners Beasley and Campbell are attorney members of the Commission, appointed by the State Bar pursuant to article 6, section 21(2)(b) of the Nevada Constitution. There is no constitutional procedure that governs the temporary replacement of disqualified board members. In such situations, the entities authorized to appoint commissioners (namely, this court, the State Bar, and the governor) customarily name alternates to replace the recused commissioners.

In this case, the State Bar did not specifically name replacements for Beasley and Campbell. Instead, the Board of Governors, through the president of the State Bar, delegated to the Commission's executive director the authority to select alternates from a list or "slate" of twelve candidates nominated by the State Bar in 1995.[35] Acting on this delegated authority, Gang accordingly replaced Commissioners Beasley and Campbell with Larry Hicks, Esq., and B. Mahlon Brown, Esq., who were both listed on the State Bar's slate of approved attorney alternates.

This court has not yet considered whether the State Bar or any other appointing authority may delegate its appointing power to Commission staff. We now conclude that the Nevada Constitution's text, structure, and purpose provide no basis for the State Bar's delegation of its appointment authority.

■■■■■■

The power of appointment to the Commission is created by article 6, section 21 of the Nevada Constitution. Subparagraph 2(b) ("the appointment clause") provides: "The commission is composed of . . . [inter alia, t]wo members of the State Bar of Nevada, a public corporation created by statute, *appointed by its board of governors."* (Emphasis added.) The appointment clause goes on to provide limitations on the appointment power: "If a vacancy occurs, the appointing authority shall fill the vacancy for the unexpired term. An appointing authority shall not appoint more than one resident of any county . . . [and] [n]o member may be a member of a commission on judicial selection."[36] As noted, the Nevada Constitution is silent with respect to the appointment or selection of Commission alternates. Nevada statutes relating to

---

[35]On June 14, 1995, the Board of Governors met and "nominated" twelve attorneys, including Larry Hicks and B. Mahlon Brown, to "fill the seat" on the Commission. The Board took no further action regarding alternates at this meeting.

[36]Nev. Const. art. 6, § 21(4).

these matters likewise make no provision for the appointment of alternates.[37] We conclude, however, that the power to appoint alternates is an inherent power of the appointing authorities.

Accordingly, we construe the text of the appointment clause as applying to the appointment of alternates. By its plain language,[38] the clause empowers the State Bar to "appoint[ ]" Commission members. "Appoint" means "to assign, designate, or set apart."[39] These words connote a particularized selection and indicate that the power to appoint is specific rather than general.

The appointment clause, by its terms, demonstrates that the appointment of alternates in this case was accomplished in violation of the state constitution. First, paragraph two vests the power of appointment in three, independently elected and distinct authorities: the governor, this court and the State Bar. The power to appoint commissioners is given to no one other than these entities. Second, the constitution establishes a scheme under which the appointing authorities designate commissioners for a specific term, and thereafter have no authority to remove the commissioners or otherwise replace them. This serves the purpose of ensuring that commissioners remain impartial by minimizing the likelihood of strategic appointments. Although there is absolutely no evidence that alternates Hicks and Brown are biased in any way, or that Gang had an ulterior motive in selecting them, we conclude that delegated appointment authority in general has the potential for undermining this carefully and thoughtfully crafted construct for neutral selection.

Accordingly, we conclude that the text of the appointment clause unambiguously precludes the State Bar from delegating its appointment power in the manner described by these parties. Therefore, the appointment of the alternates by the executive director of the Commission on Judicial Discipline, pursuant to the instructions from the Nevada State Bar, violated the state constitution.

## CONCLUSION

The record in this matter demonstrates that the Commission's

---

[37]*Cf.* NRS 1.440(2) (empowering this court to appoint two justices of the peace or municipal judge to sit on the Commission for proceedings against a justice of the peace or municipal judge. "Justices of the peace or municipal judges so appointed must be designated by an order of the supreme court to sit for such proceedings in place of and to serve for the same terms as the regular members of the commission appointed by the supreme court.").

[38]*See Rogers v. Heller,* 117 Nev. 169, 176 & n.17, 18 P.3d 1034, 1038 & n.17 (2001).

[39]*Webster's Third New International Dictionary* 105 (1968).

combination of functions did not deprive Judge Mosley of his due process rights under the Federal and Nevada State Constitutions. Accordingly, we decline to order the Commission to terminate its proceedings.[40]

We also conclude, however, that the State Bar's delegation of its appointment power violated article 6, section 21 of the Nevada Constitution. Thus, the State Bar must exercise its power to appoint Commission members on its own. We stress again that there is no evidence of any wrongdoing on the part of Gang or alternates Hicks and Brown. Gang selected the alternates solely at the request of the State Bar under a procedure it established.

Because the appointment of the alternate commissioners is infirm, we direct the clerk of this court to issue a writ of mandamus directing the Commission to declare the two positions vacant and to again seek appointment of alternates by the State Bar. The State Bar must, of course, fill these vacancies with whomever it deems appropriate. No new probable cause hearing is required because Hicks and Brown took no role in the Commission's probable cause determination.

YOUNG, ROSE and BECKER, JJ., concur.

SHEARING, J., with whom AGOSTI, J., agrees, concurring in part and dissenting in part:

I agree with the majority that Judge Mosley's due process rights under the United States and Nevada Constitutions are not violated by the Nevada Commission on Judicial Discipline's combination of functions. However, I do not agree that the procedure used by the Board of Governors of the State Bar of Nevada for appointing alternate members to the Commission violates the Nevada Constitution.

Article 6, Section 21 of the Nevada Constitution provides:

> 2.  The commission is composed of:
> (a) two justices or judges appointed by the supreme court;
> (b) two members of the State Bar of Nevada, a public corporation created by statute, appointed by its board of governors; and
> (c) three persons, not members of the legal profession, appointed by the governor.

The Constitution does not discuss replacing attorneys who must recuse themselves for conflicts of interest or other reasons. The intent of Section 21 of Article 6 of the Nevada Constitution is

---

[40]We note that the United States District Court for the District of Nevada has stayed its consideration of Judge Mosley's claim for federal relief pending interlocutory review of the Commission's denial of Judge Mosley's motion to dismiss.

clearly to have a certain balance of judges, attorneys and lay members to consider judicial discipline. We can also logically infer that the intent would certainly be that if an attorney has a conflict of interest, that attorney should not sit on the case. However, the Constitution does not specify a method for providing an alternate which is necessary in order to maintain the desired proportion of attorneys on the Commission. Therefore, the Board of Governors is free to choose a method of appointment for alternates. They have done so in this case.

The Board of Governors of the State Bar has chosen to appoint several attorney alternates so that there will be someone available to sit as the need arises. Nothing in the Constitution indicates that the Board cannot delegate the specific one-time selection of a member to a panel from among those appointed by the Board. There is absolutely nothing violative of the constitutional provisions in such appointments. On the contrary, it is fully in keeping with the letter and spirit of the Constitution. It makes no sense to apply the provisions of the Constitution for replacement of permanent members of the Commission when a vacancy occurs to the one-time substitution of alternates. Those provisions simply do not apply. Nothing in the Constitution requires the Board to call a special meeting every time a conflict arises. Considering the schedules of busy attorneys, it makes eminent sense for the Board of Governors to name several alternates so that there will be someone available to sit as a case arises.

The alternates, Larry Hicks and Mahlon Brown, should be allowed to sit on the Commission as substitutes for the recused members of the Commission.

LEAVITT, J., concurring in part and dissenting in part:

I agree with the majority that the failure of the Nevada State Bar Board of Governors to specifically name replacements for the disqualified members of the Judicial Discipline Commission violates article 6, section 21(2)(b) of the Nevada Constitution. The section clearly requires the Board of Governors to make a specific appointment to fill any vacancy, and the practice of naming a slate of twelve persons and delegating the authority to select alternates to the Executive Director of the Judicial Discipline Commission taints the entire proceeding.

The power to appoint members to the Judicial Discipline Commission is given by our constitution to three, independently elected authorities: the Nevada Supreme Court, the Governor, and the Nevada State Bar Board of Governors. This arrangement is designed to protect against the appointment of commissioners prejudiced against a judge being investigated. By allowing the executive director to make the selection, the guarantee of neutral-

ity is lost. Fairness requires that charges against an accused judge be heard by an impartial Commission.

I disagree with the majority that this fundamental error can be corrected merely by allowing the Board of Governors to appoint two new members to the Commission at this stage of the proceedings. Here, the dispute has progressed beyond the probable cause stage to the filing of a formal complaint of misconduct. Because two properly designated commissioners had not been appointed to decide the probable cause issue to support the filing of the charges, all of the actions taken by the Commission up to the filing of formal charges were in excess of its jurisdiction.

Other incidents occurred during these proceedings that individually may not warrant extraordinary relief, but the cumulative effect leaves a question as to the fairness of the whole process.

Specifically, the Executive Director hired an investigator who is the husband of one of the executive director's employees. The petitioner claims this gives the investigator an incentive to prepare a biased report to please his wife's employer. Although this does not necessarily imply the Commission would be biased against petitioner, an independent investigator would have been preferable.

Further, the prosecuting attorney for the Commission is required to sign under oath a formal statement of any charges made against a judge, and file the same with the Commission.[1] This was not done in this case. The Commission agreed the complaint was not properly signed under oath, and in order to correct the error, instructed the prosecutor to swear under the penalty of perjury that the contents of the complaint were true. The filing of the formal statement of charges lifts the confidentiality and subjects a judge to adverse publicity.[2] The requirement of an oath is intended to make sure the confidentiality of the proceedings is not lifted because of untrue, reckless and irresponsible charges. To be effective this oath must be contemporaneous with the filing of the formal charges, not subsequent thereto.

Other claims by petitioner—regarding the executive director's statement to the news media, the timing of a commissioner's recusal, the granting of media entry to the proceeding, and the combining of investigative and adjudicative functions—are all points in question but do not amount to a want of jurisdiction.

The petition should be granted, and a writ of prohibition issued preventing the Commission from proceeding under the current

---

[1]NRS 1.467.

[2]NRS 1.4683(1) states: "Except as otherwise provided in this section and NRS 1.4693, all proceedings of the commission must remain confidential until the commission makes a determination pursuant to NRS 1.467 and the prosecuting attorney files a formal statement of charges."

complaint. The Commission should begin anew with an independent investigation and with two new members of the Commission appointed by the Board of Governors pursuant to the Nevada Constitution.