## 130 Nev., Advance Opinion 11

## IN THE SUPREME COURT OF THE STATE OF NEVADA

THE HONORABLE STEVEN E. JONES,
Petitioner,
vs.
NEVADA COMMISSION ON JUDICIAL
DISCIPLINE,
Respondent.

No. 61902

FILED

FEB 27 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus seeking relief in a judicial discipline proceeding.

*Petition denied.*

Jimmerson Hansen, P.C., and James J. Jimmerson and James M. Jimmerson, Las Vegas,
for Petitioner.

David F. Sarnowski, Executive Director, and Brian R. Hutchins, Acting Executive Director, Nevada Commission on Judicial Discipline, Carson City,
for Respondent.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, CHERRY, J.:[1]

Petitioner, the Honorable Steven E. Jones, is a Nevada family court judge against whom respondent, the Nevada Commission on Judicial Discipline, is currently conducting disciplinary proceedings. Judge Jones filed this original petition for a writ of mandamus seeking to halt and dismiss the disciplinary proceedings against him because, he asserts, the Commission initiated the investigation based on a defective complaint, assigned an unfair or biased investigator who investigated issues outside of those indicated in the complaint, and is exercising its jurisdiction outside of the permissible time limits. Ultimately, we deny writ relief because most of these issues are not yet ripe for review. Nevertheless, in this opinion, we clarify that the investigatory stage of judicial discipline proceedings provides fewer due process protections than the adjudicatory stage. We also take this opportunity to address the reasoning behind our denial of Judge Jones' motion to seal these proceedings from public access.

*FACTS*

The Commission exercises original jurisdiction over the discipline of judges, which includes censure, removal, and involuntary retirement, among other forms of discipline provided for by statute. Nev. Const. art. 6, § 21(1) and (5); NRS 1.440 (exclusive jurisdiction); *see, e.g.,*

---

[1]The disciplinary proceeding that is the subject of this writ proceeding is separate and distinct from the proceeding that culminated in the Commission's February 3, 2014, Findings of Fact, Conclusions of Law and Imposition of Discipline, *available at* http://judicial.state.nv.us/ Jones%20-%20Findings%20Conclusions%20Imposition%201206-218.pdf.

 

NRS 1.4677 (forms of discipline). Before 2010, NRS 1.4655(1) provided that the Commission could investigate a judge's conduct after receiving a written, sworn complaint or any other type of information that reasonably indicated that a judge may have committed misconduct or may be incapacitated.[2] 2009 Nev. Stat., ch. 312, § 21, at 1339-40. If the complaint contained allegations that, if proven, would warrant discipline, the Commission would assign an investigator to inquire into the allegations' merits. NRS 1.4663(1). When the investigation resulted in insufficient "reason to proceed," the complaint would be dismissed. NRS 1.4667. If the results showed sufficient reason to proceed, in that there existed a likelihood that the evidence would clearly and convincingly establish grounds for discipline, the Commission would require the judge to respond to the complaint. NRS 1.4667; NRS 1.467. The Commission would then reconsider the matter in light of the judge's response and either dismiss the complaint or direct a prosecuting attorney to file a formal statement of charges, in prelude to a formal, public hearing on the charges, NRS 1.467, at which the Commission would ultimately determine whether and how to impose discipline. NRS 1.4673.

In August 2006, after reviewing police investigative reports and newspaper articles concerning Judge Jones' alleged involvement in two particular incidents of domestic battery on June 20 and 22, 2006, and a resulting temporary protective order (TPO) violation, the Commission,

---

[2]The judicial discipline provisions were substantially revised in 2009; however, the basic procedure remains the same. *See* 2009 Nev. Stat., ch. 312, §§ 1-36, at 1336-50; *id.* § 35, at 1350. As the complaint at issue here was filed in 2006, this opinion refers to the provisions in effect at that time, unless otherwise stated.

through its executive director, issued a verified statement of complaint against Judge Jones, alleging that he may have violated Canons 1, 2, and 4 of the Nevada Code of Judicial Conduct. *See* Procedural Rules of the Nevada Commission on Judicial Discipline (PRJDC) 10(2). In addition to the alleged domestic battery and TPO violation, the complaint detailed possible instances of interference with the resulting police investigation, misuse of court personnel to render personal services, and exploitation of the judicial position through involvement in a private corporation. The Commission assigned The Advantage Group to investigate the complaint.

Judge Jones was first alerted to the existence of an investigation in November 2010, when he was interviewed by The Advantage Group. He received a copy of the complaint in July 2012, along with a notice of proposed charges. In a letter attached to the complaint, the Commission explained that the complaint's main allegations had been dropped due to lack of clear and convincing evidence. Nevertheless, the Commission's letter continued, over the course of the investigation several other concerns developed, to which the Commission believed a response was warranted. In particular, the attached proposed charging document alleged that Judge Jones had, continually since approximately 1996 or 1997, violated the Nevada Code of Judicial Conduct by persuading various individuals to invest large sums of money in unsound financial schemes, some involving undisclosed ex-felons. The proposed charging document also alleged that Judge Jones had engaged in and encouraged court employees to engage in other business dealings with convicted ex-felons, asked his bailiff to personally loan an ex-felon money on multiple occasions, and attempted to convince his bailiff that Judge Jones was entitled to a portion of his bailiff's disability retirement payout. Further,

the proposed charging document alleged that Judge Jones was involved in an intimate relationship with an extern and later allowed her to appear in his courtroom without disclosing their prior relationship or recusing himself. Finally, the proposed charging document alleged that Judge Jones misappropriated marijuana evidence from an ongoing case. Outside of the first alleged unsound investment schemes, the asserted activities took place between 2002 and 2008.

Judge Jones, asserting that the investigation upon which the proposed charges are based resulted from a defective complaint, was conducted by a biased party in an untimely manner, and included an improper scope, now seeks this court's extraordinary intervention. The Commission has filed an answer, arguing that the matter is not now ripe for our consideration, and Judge Jones has filed a reply.

## DISCUSSION

This court has original jurisdiction to grant extraordinary writ relief, *MountainView Hosp., Inc. v. Eighth Judicial Dist. Court*, 128 Nev. ___, ___, 273 P.3d 861, 864 (2012); Nev. Const. art. 6, § 4, and "we are empowered to provide extraordinary relief with regard to Commission proceedings." *Mosley v. Nev. Comm'n on Judicial Discipline*, 117 Nev. 371, 377, 22 P.3d 655, 658 (2001). Whether to consider a petition for extraordinary relief, however, is within our sole discretion. *State ex rel. Dep't of Transp. v. Thompson*, 99 Nev. 358, 360, 662 P.2d 1338, 1339 (1983).

Here, Judge Jones seeks a writ of mandamus directing the Commission to take specific actions in accord with procedural aspects of the judicial discipline statutes concerning investigations and, ultimately, to dismiss the 2006 complaint filed against him. "A writ of mandamus is

available to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station or to control an arbitrary or capricious exercise of discretion." *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008); *see* NRS 34.160. Writ relief is generally available only where there is no "plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170; *see Halverson v. Sec'y of State*, 124 Nev. 484, 487, 186 P.3d 893, 896 (2008). To the extent that Judge Jones is seeking prehearing relief, no adequate legal remedy exists, as an appeal is available only from an order of censure, removal, retirement, or other discipline entered after the formal hearing. NRAP 3D(c)(2); PRJDC 34(1). As the petitioner, however, it is Judge Jones' burden to demonstrate that this court's extraordinary, prehearing intervention is warranted. *Pan v. Eighth Judicial Dist. Court*, 120 Nev. 222, 228, 88 P.3d 840, 844 (2004). Judge Jones has not met that burden here.

*Merits of the writ petition*

In challenging the Commission's actions, Judge Jones argues that the Commission violated procedural statutes and rules during the disciplinary investigation when it (1) proceeded with the investigation despite a complaint built on hearsay and unreliable evidence, (2) assigned a biased investigator and failed to restrict the investigator to charges relating to the complaint, and (3) extended the investigation beyond the time frames set forth in NRS 1.4655 and NRS 1.4681. Judge Jones asserts that he has been prejudiced by the Commission's improper actions and inactions because he now faces allegations different from those originally presented in the 2006 complaint and he has lost virtually all opportunity to mount a defense, especially in regard to the new allegations stemming

SUPREME COURT
OF
NEVADA

(O) 1947A

from alleged conduct beginning many years ago. Judge Jones also claims that the Commission arbitrarily and capriciously applied statutory and rule-based procedural safeguards during the investigatory phase of the judicial discipline proceeding and robbed him of his due process rights to notice and an opportunity to be heard, thus impinging upon a protected interest in his judicial office.

This court has recognized that "commissioned judges in this state have a protected interest in their judicial offices under the Fourteenth Amendment [of the United States Constitution]." *Mosley v. Nev. Comm'n on Judicial Discipline*, 117 Nev. 371, 378, 22 P.3d 655, 659 (2001). The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; *see also* Nev. Const. art. 1, § 8(5) ("No person shall be deprived of life, liberty, or property, without due process of law."). Thus, when a judicial office is at stake, due process mandates "a fair trial before a fair tribunal," *Ivey v. Eighth Judicial Dist. Court*, 129 Nev. ___, ___, 299 P.3d 354, 357 (2013), requiring, at least, notice of the charges and an opportunity to be heard. *See Callie v. Bowling*, 123 Nev. 181, 183, 160 P.3d 878, 879 (2007).

We have recognized in another context, however, that due process rights generally are not implicated during purely investigatory proceedings. *Hernandez v. Bennett-Haron*, 128 Nev. ___, ___, 287 P.3d 305, 310-11 (2012) (citing *Hannah v. Larche*, 363 U.S. 420, 442 (1960)). In *Hernandez*, highway patrol officers challenged the constitutionality of county code provisions establishing coroner's inquests into officer-related deaths, arguing in part that the provisions violated due process guarantees. *Id.* at ___, 287 P.3d at 308. In determining whether due

process guarantees were impacted, we considered the constitutional interest at issue, the type of proceeding involved, and the proceeding's potential impact on due process protections. *Id.* After analyzing several United States Supreme Court cases on the subject, which culminated in the conclusion that merely investigatory proceedings do not adjudicate legal rights and thus do not implicate due process protections, *id.* at ___, 287 P.3d at 313, we concluded that coroner's inquests were merely investigatory and thus did not trigger due process rights. *Id.* at ___, 287 P.3d at 314.

The same result is warranted here. In Nevada, as elsewhere, judicial discipline proceedings are divided into two distinct phases: investigatory and adjudicatory. *See* NRS 1.4663 (governing investigations of alleged misconduct to determine whether to issue a formal statement of charges); NRS 1.4673 (governing hearings on formal statements of charges, after which disciplinary actions may be imposed). *See, e.g., In re Flanagan*, 690 A.2d 865, 871-72 (Conn. 1997); *In re Henson*, 913 So. 2d 579, 589 n.3 (Fla. 2005); *In re Chrzanowski*, 636 N.W.2d 758, 769 (Mich. 2001). During the investigatory proceedings, which are confidential, the Commission reviews the complaint, appoints an investigator and considers the investigator's report, and weighs the judge's response to any probable cause determination; at each step, the Commission is required to determine whether there exists sufficient cause to proceed to the next stage or whether the complaint should be dismissed. Once a formal statement of charges against the judge is filed, the adjudicatory proceedings must be made open to the public, and the judge has every opportunity afforded under the law to defend, including notice of the charges and a formal hearing. NRS 1.4683(1); NRS 1.4687. It is during

this phase that the judge's legal rights are adjudicated, not before. Accordingly, due process rights will generally not attach before a formal statement of charges is filed.

Other jurisdictions, distinguishing between the availability of due process protections during an investigation and those that attach when adjudication begins, have likewise determined that due process protections do not attach until a judicial discipline proceeding has been initiated. *See In re Petition to Inspect Grand Jury Materials*, 576 F. Supp. 1275, 1284 (S.D. Fla. 1983); *Ryan v. Comm'n on Judicial Performance*, 754 P.2d 724, 729 (Cal. 1988) (stating that while "a judge certainly has the right to conduct a proper defense in disciplinary actions[,] . . . the right attaches [only] once formal proceedings are instituted," not during the preliminary investigation); *Flanagan*, 690 A.2d at 875 (citing other cases holding the same). In rejecting the appellant's claimed due process right to pre-probable-cause notice of the charges, the Connecticut Supreme Court in *In re Flanagan* stated that "[a] judge is only entitled to reasonable notice of the charges upon which he may be disciplined after the review council has determined what those charges are." 690 A.2d at 875-76. "'Simply stated, a judge does not have the [constitutional] right to defend against a proceeding that has not yet been brought.'" *Id.* at 875 (alteration in original) (quoting *Ryan*, 754 P.2d at 747).

We agree that due process rights generally do not attach during the investigatory phase of judicial discipline proceedings, as this will allow the investigation to proceed unimpeded until the Commission has determined whether formal charges should be brought. Allowing for unobstructed investigation furthers the Commission's goal of protecting the integrity of the judiciary and safeguarding public confidence in the

judicial branch but does not unduly burden the judge's right and ability to defend. *See* NRS 1.462 (explaining that the purpose of judicial discipline is "to preserve an independent and honorable judiciary"); *Flanagan*, 690 A.2d at 875 ("Two interests must be accommodated in judicial disciplinary proceedings: (1) the review council must have broad authority to investigate the conduct of our judges in order to maintain public confidence in the judiciary; and (2) our judges must be afforded adequate process before discipline is imposed to ensure that discipline is not imposed on the basis of unfounded charges of misconduct."). Accordingly, due process typically will not be implicated during the investigatory stage, and Judge Jones' claimed procedural violations regarding the prehearing complaint, investigation, and time limits must be viewed in this context. As the California Supreme Court has recognized, absent due process concerns, relief from any procedural violations occurring during the investigatory stage may be obtained only by a showing of actual prejudice. *Ryan*, 754 P.2d at 729.

The requisite showing of actual prejudice is not present in this case. Both at the time the complaint was filed in 2006 and today, there is no absolute prohibition against initiating an investigation based on hearsay and inadmissible evidence included in the complaint. NRS 1.4655(1) (Commission can proceed on "[i]nformation from any source and in any format, from which the Commission may reasonably infer that the justice or judge may have committed misconduct or be incapacitated"); *see* Nev. Const. art. 6, § 21(9) (providing that "[a]ny matter relating to the fitness of a justice or judge may be brought to the attention of the Commission by any person or on the motion of the Commission"); NRS 1.4263 (as amended in 2009) (defining, currently, "complaint" as

"information in any form and from any source that alleges or implies judicial misconduct or incapacity"). The important consideration is whether the alleged misconduct is capable of proof. NRS 1.4663(1) (requiring that the "complaint contain[ ] allegations which, if true, would establish grounds for discipline"); *see* NRS 1.4657 and NRS 1.4663 (as amended in 2009) (both requiring the Commission to determine that the "complaint alleges objectively verifiable evidence from which a reasonable inference could be drawn that a judge committed misconduct or is incapacitated" before initiating an investigation). Further, although Judge Jones may now face different allegations from those asserted in 2006, judges generally have no right to avoid charges based on new evidence discovered during the course of a legitimate investigation. *Flanagan*, 690 A.2d at 875-76 (explaining that there exists no right during the investigatory stage to notice of the charges or to limit the investigation and charges to only those set forth in the complaint). Judge Jones has not asserted or shown that the additional proposed charges were unfounded or rendered with improper motive, and there is no indication that the allegations were stated in a manner insufficient to allow Judge Jones to respond. Although Judge Jones argues that he is unable to defend against the proposed charges because the evidence has become unavailable and for other reasons, he has not so demonstrated with specific facts, and regardless, those inherently factual issues are not properly before us in the first instance. *See generally Millspaugh v. Millspaugh*, 96 Nev. 446, 448-49, 611 P.2d 201, 202 (1980) (stating that knowledge of the running of the statute of limitations is "a question of fact to be determined by the jury or trial court after a full hearing where . . . the facts are susceptible to opposing inferences" (internal quotation omitted)); *Round Hill Gen.*

SUPREME COURT
OF
NEVADA

(O) 1947A

11

*Improvement Dist. v. Newman*, 97 Nev. 601, 604, 637 P.2d 534, 536 (1981) (explaining that this court is ill-suited to resolve factual issues). Based on Judge Jones' failure to demonstrate that writ relief is warranted, we decline to address Judge Jones' procedural challenges to the Commission's actions at this time. Essentially, this writ petition is premature. The timing concerns and any other alleged prejudicial procedural violations may be raised during any formal hearing on the charges and, if aggrieved by the final decision, to this court on appeal.

*Sealing of court records and documents*

In arguing that this court's extraordinary intervention was warranted at this stage in the proceedings, Judge Jones validly pointed out that, to some extent, once formal charges are filed and the matter made public, damage to his reputation cannot be undone. For this reason, Judge Jones also moved to seal the court record in this case under Rule for Sealing and Redacting Court Records (SRCR) 3. In so doing, he asserted that the public's interest in open access to the courts should yield to the compelling interests underpinning confidentiality before the Commission, including but not limited to, meritless complaints, attracting and retaining high-quality judicial personnel, preventing belligerent litigants from harassing judges, and encouraging judges with valid complaints against them to retire rather than risk a public hearing.

SRCR 3 provides procedures for sealing court records or documents in civil cases. It states that when a motion is made to seal, the information to be sealed remains confidential for a reasonable period until the court determines whether appropriate grounds exist for sealing the records. *See* SRCR 3. Courts may only seal their records or documents when the sealing is "justified by identified compelling privacy or safety

interests that outweigh the public interest in access to the court record." SRCR 3(4).[3] This presumption favoring public access to judicial records and documents is only overcome when the party requesting the sealing of a record or document demonstrates that "the public right of access is outweighed by a significant competing interest." *Howard v. State*, 128 Nev. ___, ___, 291 P.3d 137, 142 (2012) (discussing SRCR 3).

In an attempt to meet this burden, Judge Jones relied on the catchall provision that justifies sealing or redaction when a party identifies another "compelling circumstance." SRCR 3(4)(h). But we have already concluded that the statute recognizing the state's interest in the confidentiality of judicial disciplinary proceedings by or before the Commission does not apply to proceedings before this court.[4] *Matter of Halverson*, 123 Nev. 493, 507, 169 P.3d 1161, 1171 (2007) ("[ARJD 5, requiring confidentiality until the filing of a formal statement of charges] did not apply to proceedings in this court, particularly in light of NRS 1.090's mandate that, with only limited exceptions, all courts of justice be

---

[3]Identified compelling interests include statutory authorization by state or federal law; furthering a district court or justice court protective order or order striking material from the record; protecting public health and safety; protecting personal, medical, or tax information; protecting the confidentiality of settlement agreements; and protecting intellectual property or trade secrets. SRCR 3(4)(a)-(g).

[4]Administrative and Procedural Rule for the Nevada Commission on Judicial Discipline (ARJD) 5 was repealed and superseded by NRS 1.4683. We held in *Halverson* that the provisions of NRS 1.4683 are "nearly identical" to the prior rules governing confidentiality of proceedings before the Commission, and "*Steffen* remains the controlling authority with respect to appeals from confidential Commission rulings." *Halverson*, 123 Nev. at 508, 169 P.3d at 1171.

open to the public . . . ."); *Attorney Gen. v. Steffen*, 112 Nev. 369, 373-74, 915 P.2d 245, 248 (1996). Thus, "when a judge avails himself of the traditionally public forum of this court and seeks to have all proceedings against him by the Commission . . . dismissed," the "public policies to keep government open and the public informed" prevail over "the state public policy favoring confidentiality in initial judicial discipline proceedings." *Steffen*, 112 Nev. at 373-74, 915 P.2d at 248. The public has a "right and need . . . to know of such an extraordinary dispute in governmental affairs." *Id.* at 374, 915 P.2d at 248. In addition, the threat of "secret judicial proceedings" would undermine "public confidence in this court and the judiciary," while "[o]penness promotes public understanding, confidence, and acceptance of judicial processes and results." *Id.* at 374, 915 P.2d at 248-49. Accordingly, the motion to seal was denied, and the proceedings before this court have been made publicly available.

## CONCLUSION

As discussed above, at this investigatory stage in the judicial discipline proceedings below, Judge Jones has not demonstrated actual prejudice stemming from any procedural or substantive violations sufficient to warrant writ relief at this time, although he may be able to establish such harm in the future. Because of the premature nature of

SUPREME COURT
OF
NEVADA

(O) 1947A

this writ petition, we conclude that our extraordinary intervention is not warranted. After this case has developed factually, a future appeal from any final order of discipline will allow for meaningful review. Accordingly, we deny this petition for extraordinary writ relief.

_____, J.
Cherry

We concur:

_____, C.J.
Gibbons

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Saitta

SUPREME COURT
OF
NEVADA

(O) 1947A