JORGE HERNANDEZ, AN INDIVIDUAL; BRITTANY BURTNER, AN INDIVIDUAL; KEVIN McNEAL, AN INDIVIDUAL; HEATHER NEELY, AN INDIVIDUAL; AND SCOTT SIMON, AN INDIVIDUAL, APPELLANTS, *v.* THE HONORABLE KAREN P. BENNETT-HARON, IN HER OFFICIAL CAPACITY AS CHIEF JUDGE OF LAS VEGAS TOWNSHIP JUSTICE COURT IN AND FOR CLARK COUNTY, NEVADA; P. MICHAEL MURPHY, IN HIS OFFICIAL CAPACITIES AS CORONER AND DEPUTY PUBLIC ADMINISTRATOR OF CLARK COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA; AND CHRISTOPHER LAURENT, IN HIS OFFICIAL CAPACITY AS CHIEF DEPUTY DISTRICT ATTORNEY IN THE OFFICE OF DISTRICT ATTORNEY FOR CLARK COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA, RESPONDENTS.

No. 59861

October 25, 2012

287 P.3d 305

*Reisman Sorokac* and *Joshua H. Reisman, Anthony Stirling*, and *Robert R. Warns, III*, Las Vegas, for Appellants.

*Garcia-Mendoza & Snavely, Chtd.*, and *Eva Garcia-Mendoza* and *Luther M. Snavely, III*, Las Vegas, for Respondents.

*Allen Lichtenstein* and *Katrina M. Rogers*, Las Vegas, for Amicus Curiae American Civil Liberties Union of Nevada.

# OPINION

By the Court, HARDESTY, J.:

In this opinion, we address the constitutionality of the Clark County Code of Ordinance provisions that establish coroner's inquests into an officer-involved death. Appellants, five Nevada Highway Patrol Officers, contend that the inquest procedures and provisions violate their due process rights under the Nevada Constitution and that, by requiring justices of the peace to preside over the inquest process, the Clark County Board of County Commissioners unconstitutionally impinged on the Legislature's authority to establish the jurisdiction of justices of the peace. Although we conclude that appellants' due process arguments fail, we determine that the code provision requiring that a justice of the peace serve as presiding officer in coroner's inquest proceedings regarding officer-involved deaths intrudes on the Legislature's exclusive authority over the jurisdiction of justices of the peace. Because the code makes no provision for anyone other than a justice of the peace to serve as presiding officer in such proceedings, we conclude that the offending provision cannot be severed, which requires the entire inquest scheme regarding officer-involved deaths to be struck down.

## *PROCEDURAL BACKGROUND*

The underlying coroner's inquest proceeding was prompted after appellants, Nevada Highway Patrol Officers, responded to an incident that resulted in a man's death. Before the inquest proceedings against appellants commenced, the Clark County Board of Commissioners amended the coroner's inquest ordinance. After appellants were notified that a coroner's inquest had been initiated, appellants filed separate complaints in the district court seeking declaratory and injunctive relief challenging the validity of the

amended ordinance based on asserted constitutional violations. The complaints were later consolidated.

According to the district court docket entries, appellants filed a motion and application for both a temporary restraining order and a preliminary injunction, which Clark County respondents opposed.[1] The day before the scheduled pre-inquest conference was to begin, the district court held a hearing on appellants' application for a temporary restraining order. The district court subsequently entered an order granting the request for a temporary restraining order, which prohibited the respondents from going forward with the inquest proceeding until the court ruled on the application for a preliminary injunction.

Thereafter, the district court entered a written judgment rejecting the majority of appellants' claims and upholding all but one of the Clark County code sections pertaining to inquest proceedings related to officer-involved deaths. The judgment also dissolved the temporary restraining order and denied injunctive relief. These appeals followed. This court subsequently granted, over respondents' opposition, appellants' emergency motion to stay the subject inquest proceedings and directed expedited briefing. The American Civil Liberties Union of Nevada was granted permission to file an amicus curiae brief in this matter and to participate in oral argument, which was held before the en banc court in Las Vegas.

## CORONER'S INQUEST

The legal questions presented on appeal concern the validity of the Clark County coroner's inquest procedures for officer-involved deaths as amended by the Board of Commissioners, and thus, we begin by examining the relevant code sections before considering the parties' arguments.

The board of county commissioners for any county in this state is authorized by statute, NRS 244.163, to create a county coroner's office.[2] Currently, Clark and Washoe Counties are the only counties in the state to have coroner's offices. Clark County established its coroner's office and set forth the coroner's duties and the procedures for coroner's inquests by enacting the Clark County, Nevada, Code of Ordinances (CCCO), Title 2, Chapter 2.12. Under the procedures set forth in this chapter, when an officer-

---

[1]The parties have not included copies of this motion, the opposition thereto, and the reply in their joint appendix. Similarly, respondents submitted two supplemental filings related to this motion after the initial hearing at which the temporary restraining order was granted. The joint appendix, however, includes only three pages and two exhibits from one of those filings.

[2]In those counties that have not created a county coroner's office, the sheriff serves as the coroner, and any inquest is conducted according to statute. NRS 259.020; NRS 259.050.

involved death occurs, the coroner calls an inquest and a presiding officer is selected. CCCO § 2.12.080(c). An officer-involved death occurs when an officer, while acting in his or her official capacity, uses force that may contribute to the death of a person or the officer actively takes some role in causing a vehicular accident that leads to a person's death. CCCO § 2.12.010(p). An inquest is conducted when "circumstances support reasonable grounds to suspect" that a death was unnatural. CCCO § 2.12.010(c). As regards the presiding officer, "the chief judge from the township where the death occurred shall appoint a qualified magistrate, as defined in section 2.12.010(l), to sit as the presiding officer in the inquest." CCCO § 2.12.020(e). A "[q]ualified magistrate" is defined as "a justice of the peace from any jurisdiction within Clark County who is an attorney duly licensed to practice law in the state of Nevada." CCCO § 2.12.010(l). "The presiding officer shall preside over the inquest and shall insure that the inquest is conducted as an investigatory and fact finding proceeding and not an adversarial proceeding." CCCO § 2.12.080(m).

Before the inquest, the coroner provides the presiding officer with a written overview of the case. CCCO § 2.12.080(f). Additionally, the presiding officer and the coroner compile copies of all records, exhibits, or other evidence that they determine to be relevant to the matter under investigation. CCCO § 2.12.080(i). The county prosecutor also assists the presiding officer with preparing for the inquest and works at the direction of the presiding officer, though in this role, the prosecutor serves as a neutral presenter of facts and not as an advocate for any interested parties. CCCO § 2.12.080(g). The presiding officer may appoint an inquest ombudsperson, who is a licensed lawyer in Nevada, to represent the deceased's family throughout the proceeding. CCCO § 2.12.010(r); CCCO § 2.12.075(a).

Another integral part of the proceeding is an inquest panel, which begins with 15 individuals who are selected by the Clark County jury commissioner. CCCO § 2.12.080(l). From this group, the presiding officer selects at random 7 persons to sit as the inquest panel. CCCO § 2.12.080(m). The presiding officer examines each person for bias, prejudice, or any other good and sufficient reason for dismissal and takes reasonable efforts to ensure that the panel is as diverse and representative of the community as possible. CCCO § 2.12.080(m)(1).

At the start of the inquest proceedings, the presiding officer makes an opening statement indicating that the inquest is not adversarial but is a fact-finding proceeding. CCCO § 2.12.080(m)(2). The presiding officer provides instruction to the inquest panel regarding their conduct outside the proceeding, CCCO § 2.12.080(m)(6), and prepares interrogatories that the in-

quest panel will answer regarding questions of fact. CCCO § 2.12.080(m)(7); CCCO § 2.12.100. The findings made pursuant to interrogatories do not bind the prosecutor's office or preclude any future civil or criminal proceedings. CCCO § 2.12.140. It is under these procedures that the coroner's inquest in question is to be conducted.

## DISCUSSION

On appeal, appellants primarily argue that their due process rights under the Nevada Constitution will be violated if they are forced to participate in the coroner's inquest process under the procedures set forth in the Clark County, Nevada, Code of Ordinances for inquests involving officer-involved deaths. Appellants further contend that by designating justices of the peace to perform the duties of presiding officer in the coroner's inquest process, the Clark County Board of County Commissioners intruded upon the Nevada Constitution's express delegation of authority to the Legislature to establish the jurisdiction of the justices of the peace. We address these arguments in turn.[3]

### Standard of review

In the absence of any factual dispute, this court reviews a district court's decision to grant or deny declaratory and injunctive relief de novo. *Nevadans for Nevada v. Beers*, 122 Nev. 930, 942, 142 P.3d 339, 347 (2006); *see also Secretary of State v. Give Nevada A Raise*, 120 Nev. 481, 486 n.8, 96 P.3d 732, 735 n.8 (2004). In addition, this court reviews de novo determinations of whether a statute is constitutional. *Flamingo Paradise Gaming v. Att'y General*, 125 Nev. 502, 509, 217 P.3d 546, 551 (2009).

---

[3]This case is ripe for our review because the alleged harm is sufficiently concrete so as to yield an actual case or controversy. *Herbst Gaming, Inc. v. Sec'y of State*, 122 Nev. 877, 887, 141 P.3d 1224, 1231 (2006) (noting that "[w]hile harm need not already have been suffered, it must be probable for the issue to be ripe for judicial review"); *Matter of T.R.*, 119 Nev. 646, 651, 80 P.3d 1276, 1279 (2003) ("The factors to be weighed in deciding whether a case is ripe for judicial review include: (1) the hardship to the parties of withholding judicial review, and (2) the suitability of the issues for review."). In this case, the inquest proceeding has already been initiated, and thus, as in *T.R.*, the application of the relevant code section to appellants is certain. Moreover, deferring ruling on the constitutional challenges at issue here will harm appellants, as they would be required to go through the inquest process without knowing the extent of any available due process protections and whether the individual presiding over the proceeding was constitutionally authorized to do so.

*The Clark County coroner's inquest proceeding does not infringe upon due process guarantees*

Under Nevada's due process clause, "[n]o person shall be deprived of life, liberty, or property, without due process of law." Nev. Const. art. 1, § 8(5). Although appellants do not challenge the constitutionality of the Clark County code under the federal constitution, the similarities between the due process clauses contained in the United States and Nevada Constitutions, *Rodriguez v. Dist. Ct.*, 120 Nev. 798, 808 n.22, 102 P.3d 41, 48 n.22 (2004) (recognizing that "[t]he language in Article 1, Section 8(5) of the Nevada Constitution mirrors the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution"), permit us to look to federal precedent for guidance as we determine whether the procedures utilized in the inquest proceedings regarding officer-involved deaths are consistent with the due process clause set forth in Article 1, Section 8(5) of the Nevada Constitution.

" 'Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts." *Hannah v. Larche*, 363 U.S. 420, 442 (1960); *accord Weaver v. State, Dep't of Motor Vehicles*, 121 Nev. 494, 502, 117 P.3d 193, 199 (2005) ("What constitutes adequate [due process] procedure[s] varies depending on the circumstances of a particular case."). The level of due process that must be provided in a particular government proceeding depends on the effect that the proceeding will have on a constitutionally protected interest. *Hannah*, 363 U.S. at 442. When a government agency is conducting proceedings, due process mandates that the protections afforded depend on whether the proceedings result in a binding adjudication or a determination of legal rights, in which case due process protections are greater. *Id.* Such protections, however, need not be made available in proceedings that merely involve fact-finding or investigatory exercises by the government agency. *Id.* Determining whether particular due process protections must be provided requires consideration of the constitutional interest at stake, the type of proceeding being conducted, and the potential that such protections will be unduly burdened by the proceeding. *Id.*

Appellants assert that the inquest proceedings impliedly put their liberty and property interests at stake, as the proceedings involve an examination of their roles in causing a death to determine whether criminal laws have been violated in order to "furnish the foundation for a criminal prosecution." They insist that the over-

all purpose of the inquest is to find them guilty of violating criminal laws and to brand them in public as criminals. To support this contention, appellants point out that a prosecutor participates in the inquest proceeding and that he or she has input on the witnesses to be called, how the inquest will be conducted, the scope of the issues, the scope of questioning, and the preparation of the interrogatories. Noting that the inquest ordinance allows both the deceased's family's attorney and the inquest ombudsperson to participate in the inquest process, appellants maintain that the deceased's family's attorney will seek to obtain admissions from them that can be used in any civil wrongful death action filed against them, and they argue that "it defies rationality to assume that [his] prosecutorial zeal will not permeate the entire proceeding."[4]

Respondents disagree with appellants' contentions and assert that there is no implication of due process protections where, as here, a government body does not determine any civil or criminal liability; does not make determinations depriving anyone of life, liberty, or property; and only serves to find facts that may subsequently be used as the basis for legislative or executive action.

### Federal precedent

Our consideration of the due process issues presented by the parties focuses on three federal court decisions addressing similar

---

[4]Appellants also argue that the inquest proceeding may be televised, CCCO § 2.12.080(k), with information made immediately available to the public, CCCO § 2.12.150, and that the damage that this may cause to their reputation, jobs, or future criminal prosecution violates their due process rights. Damage to one's reputation by itself is generally not a constitutionally protected interest. *See Paul v. Davis*, 424 U.S. 693, 711-12 (1976); *see also Hannah v. Larche*, 363 U.S. 420, 442-43 (1960) (rejecting arguments that reputational harm and the possibility of criminal prosecution require the provision of due process associated with adjudicatory proceedings when the proceeding at issue is investigatory in nature and stating that "such collateral consequences . . . would not be the result of any affirmative determinations made by [the investigatory body] and they would not affect the legitimacy of [its] investigative function"). With regard to the impact of the inquest procedures on any subsequent criminal proceedings, any pretrial publicity caused by the inquest that results in prejudice in subsequent criminal proceedings may be remedied like any other pretrial activity resulting in publicity. *See State v. Roraff*, 159 N.W.2d 25, 30 (Wis. 1968) (finding that "[i]t is not the source of pretrial publicity which determines the prejudice and the remedy but the nature, amount and the effect of such pretrial publicity"). The judicial system remedies the negative effects of prejudicial pretrial publicity by allowing for a change of venue or other remedial actions. *See, e.g., Sicor, Inc. v. Sacks*, 127 Nev. 896, 902-03, 266 P.3d 618, 622 (2011) (expanding the multifactor test for determining whether there is a reason to believe that the party seeking a change of venue will not receive a fair trial based on pretrial publicity in the community where the case originated).

concerns to those posed by appellants. We begin by considering the United States Supreme Court's decision in *Hannah v. Larche*, 363 U.S. 420 (1960), in which the Court articulated the test for determining whether due process rights attach in a particular proceeding and concluded that those rights traditionally associated with adjudicatory proceedings do not attach in the context of an investigatory proceeding. We then turn to the Court's subsequent decision in *Jenkins v. McKeithen*, 395 U.S. 411 (1969), in which the *Hannah* test was applied to determine that due process rights do attach in the context of an adjudicatory proceeding. Lastly, instructional to our analysis is the United States Court of Appeals for the First Circuit's decision in *Aponte v. Calderon*, 284 F.3d 184 (1st Cir. 2002), which provides a well-reasoned discussion of the analysis in *Hannah* and *Jenkins* as it relates to determining whether due process rights are implicated in a particular proceeding.

First, in *Hannah*, the Supreme Court addressed due process challenges to rules of procedure adopted by the Commission on Civil Rights under the Fifth Amendment's Due Process Clause. 363 U.S. 420. The case arose out of the commission's investigation of alleged voting deprivations in Louisiana. *Id.* at 421. Registrars of voters and private citizens were called to appear before the commission. *Id.* at 421-22. These parties moved to enjoin the commission from conducting its hearing on the basis that the commission's rules protected the identity of the persons submitting the complaint and denied those summoned to testify from cross-examining the persons who filed the complaints or from calling any witnesses. *Id.* at 422. The Court considered the parties arguments that the commission's procedures might irreparably harm those being investigated by subjecting them to public disgrace or shame, the possibility of losing their jobs, and even criminal prosecution. *Id.* at 442-43. The Court noted that these arguments were conjecture, but the Court observed that "even if such collateral consequences were to flow from the Commission's investigations, they would not be the result of any affirmative determinations made by the Commission, and they would not affect the legitimacy of the Commission's investigative function." *Id.* at 443.

Concluding that the requirements of due process vary with the type of proceeding involved, *id.* at 442, the Court noted that the civil rights commission's duties included investigating allegations that individuals have been discriminatorily deprived of the right to vote, studying and collecting information related to denials of equal protection of the laws, and reporting its findings and recommendations to the President and Congress. *Id.* at 440. From this information, the Court extrapolated that the commission's function was "purely investigative and fact-finding" because "[i]t does not adjudicate. It does not hold trials or determine anyone's civil or

criminal liability. . . . Nor does it indict, punish, or impose any legal sanctions . . . [or] make determinations depriving anyone of his life, liberty, or property." *Id.* at 441. In sum, the Court concluded that "[t]he only purpose of [the commission's] existence is to find facts which may subsequently be used as the basis for legislative or executive action." *Id.* Thus, the Court concluded that because the commission's role was investigatory, the commission's procedures did not violate the due process right of those challenging the commission's proceedings. *Id.* at 451.

Nearly a decade later, in *Jenkins v. McKeithen*, 395 U.S. 411 (1969), the Court applied the *Hannah* test to determine whether a Louisiana statute creating a body called the Labor-Management Commission of Inquiry ran afoul of, among other things, the Fourteenth Amendment's Due Process Clause. There, the commission was charged with investigating and determining whether probable cause existed regarding certain criminal law violations and making suggestions as to prosecution. *Id.* at 416-17. With regard to the proceedings, the commission had the authority to call witnesses. *Id.* at 417. And while the witnesses had the right to have counsel present and to offer advice, cross-examination was limited. *Id.* at 417-18.

At the outset, the *Jenkins* Court noted that the stated purpose of the commission at issue was to investigate and make findings of fact " 'relating to violations or possible violations of criminal laws,' " *id.* at 414, and to supplement and assist the efforts of district attorneys and other law enforcement personnel. *Id.* at 414-15. The commission's authority was specifically limited to criminal violations, and it could not take action with regard to any strictly civil aspects of any labor problem. *Id.* at 415. Although its adjudication of any criminal violations was not binding and could "not be used as prima facie or presumptive evidence of guilt or innocence in any court of law," the commission's findings could include conclusions with regard to specific individuals and it could make recommendations for future actions. *Id.* at 417. The Court noted that the commission was required to report its findings to the proper authorities "if it finds there is probable cause to believe that violations of the criminal laws have occurred." *Id.*

Thus, in stark contrast to the investigatory agency at issue in *Hannah*, the *Jenkins* Court held that the commission "very clearly exercises an accusatory function; it is empowered to be used and allegedly is used to find named individuals guilty of violating the criminal laws" and "to brand them as criminals in public." *Id.* at 427-28. Therefore, the Court held that based on the commission allegedly making "an actual finding that a specific individual is guilty of a crime, we think that due process requires the Commis-

sion to afford a person being investigated the right to confront and cross-examine the witnesses against him, subject only to traditional limitations on those rights.'' *Id.* at 429.

Finally, in *Aponte v. Calderon*, 284 F.3d 184 (1st Cir. 2002), the United States Court of Appeals for the First Circuit synthesized the distinction between the investigatory proceedings addressed in *Hannah* and the adjudicatory proceedings discussed in *Jenkins* in resolving due process issues pertaining to a commission created by executive order of the Governor of Puerto Rico to address issues related to the use of public resources and government corruption. *Aponte*, 284 F.3d at 186, 191-95. The commission in *Aponte* was empowered to conduct investigations, make factual findings, and ultimately issue recommendations with regard to, among other things, ''further proceedings, either administrative, civil, or criminal, against certain persons.'' *Id.* at 187. The commission could not, however, initiate or file civil, criminal, or administrative charges or make adjudications of criminal liability or probable cause determinations. *Id.*

In examining the constitutionality of the executive order under *Hannah* and *Jenkins*, the *Aponte* court noted that the Supreme Court ''has steadfastly maintained [the] distinction between general fact-finding investigations,'' which do not implicate due process rights, ''and adjudications of legal rights'' for which due process concerns may be implicated. *Id.* at 192-93. Applying this analysis to the issues before it, the *Aponte* court concluded that without an adjudication of legal rights, due process rights are not triggered, and because the commission at issue there did not and could not adjudicate legal rights, no adjudication could occur, and thus, due process concerns were not triggered, even if the possibility existed that the investigations could lead to criminal prosecutions. *Id.* at 193-95.

### *Clark County coroner's inquest*

Turning to the present case, we note that the Clark County code provisions pertaining to the inquest procedures for officer-involved deaths fail to provide a clear statement of purpose. *See, e.g., Jenkins*, 394 U.S. 416. The lack of an express purpose requires this court to review the relevant information in the code to assess the nature and function of the inquest proceeding and to glean from the delineation of the inquest duties and procedures, set forth in CCCO § 2.12.080, whether and to what extent due process protections are implicated. When the nature and function of the inquest proceedings are examined in light of the analyses set forth in *Hannah*, *Jenkins*, and *Aponte*, it becomes evident that the Clark County proceedings only serve a fact-finding and investigatory function be-

cause the proceedings do not result in an adjudication or determination of any of appellants' legal rights. The sole product of the inquest process are factual findings which, in and of themselves, are not binding or entitled to preclusive effect in any future proceeding.

Looking to the Clark County code, the inquest procedures require the presiding officer to "insure that the inquest is conducted as an investigatory and fact finding proceeding and not an adversarial proceeding." CCCO § 2.12.080(m). Thus, the presiding officer must, among other things, make an opening statement indicating that the inquest is a fact-finding, rather than an adversarial, proceeding, CCCO § 2.12.080(m)(2), and must "prepare the set of interrogatories for the inquest . . . [that] shall deal only with questions of fact and shall not deal with questions of fault or guilt." CCCO § 2.12.080(m)(7). Further, section 2.12.140, entitled "Panel Interrogatories," spells out what the end result of the inquest proceeding will be. Under that section, "[a]fter hearing the testimony, the inquest panel shall deliberate in secret and answer" the interrogatories prepared pursuant to section 2.12.080(m)(7), which "deal only with questions of fact and shall not deal with questions of fault or guilt." CCCO § 2.12.140(a). The findings made pursuant to these interrogatories, however, "shall not be binding on the district attorney's office nor shall the findings have any preclusive effect in any future civil or criminal proceeding." *Id.*

These provisions, therefore, demonstrate that the inquest's function is "purely investigative and fact-finding" because no adjudication or determination of liability occurs. *Hannah*, 363 U.S. at 441. The inquest panel does not "indict, punish, or impose any legal sanctions . . . [or] make determinations depriving anyone of his life, liberty, or property"; its "only purpose . . . is to find facts which may subsequently be used as the basis for legislative or executive action." *Id.* And unlike the statutes at issue in *Jenkins*, the inquest panel is not authorized to make a recommendation to the district attorney or any other law enforcement body. *See generally* CCCO § 2.12.080 (setting forth the duties and procedures for the inquest); CCCO § 2.12.140(a) (addressing panel interrogatories). More importantly, however, in contrast to the probable cause determinations and findings of fact relating to violations or potential violations of criminal law made by the commission at issue in *Jenkins*, the interrogatories answered by the inquest panel in this case are specifically prohibited from dealing with questions of fault or guilt. CCCO § 2.12.080(m)(7); CCCO § 2.12.140(a).

Thus, under *Hannah*, *Jenkins*, and *Aponte*, the inquest process constitutes an investigatory, rather than an adjudicatory, proceed-

ing. As a result, due process protections are not triggered by the inquest process.[5]

Having concluded that the inquest at issue in this case is investigatory, rather than adjudicatory, our analysis goes no further. We therefore affirm that portion of the district court's order rejecting appellants' due process arguments. We now turn to whether, by involving justices of the peace in the inquest process, the Clark County Board of County Commissioners has unconstitutionally intruded on the Legislature's exclusive authority to determine the jurisdiction of the justices of the peace.

*Justices of the peace participation in the inquest process violates the Nevada Constitution*

The Nevada Constitution expressly provides that only the Legislature has the authority to determine, by law, the jurisdictional limits of the justices of the peace. Specifically, Article 6, Section 8 of the Constitution states that the Legislature "shall fix by law . . . the limits of [justices of the peace's] civil and criminal jurisdiction, according to the amount in controversy, the nature of the case, the penalty provided, or any combination of these." To that end, the Legislature enacted NRS 4.370(1), which provides that the justice courts are courts of limited jurisdiction and have only the authority granted to them by statute.[6] *See State of Nevada v. Justice Court,* 112 Nev. 803, 805, 919 P.2d 401, 402 (1996); *see also* NRS 4.170 (providing that justices of the peace shall be conservators of the peace in their respective townships and shall discharge such duties as may be prescribed by law).

Appellants contend that by providing for the participation of justices of the peace in the inquest process, the Clark County Board of County Commissioners unconstitutionally intruded on the Nevada Constitution's express delegation of power to the Legisla-

---

[5]The United States District Court for the District of Nevada recently reached the same conclusion in addressing similar constitutional challenges to the Clark County inquest proceedings brought by police officers with the Las Vegas Metropolitan Police Department. *See Zaragoza v. Bennett-Haron,* No. 11-CV-01091-PMP-GWF, 2011 WL 6097754, *8-9 (D. Nev. Dec. 5, 2011) (concluding that the inquest was investigatory and did not adjudicate any legal rights and, thus, did not trigger the due process clause).

[6]The ACLU suggests that, under CCCO § 2.12, a justice of the peace is acting as a presiding officer of an investigatory body outside the purview of the justice court and is not acting with the authority of a justice court magistrate. The ACLU has pointed to no authority that allows an entity other than the Legislature to assign duties to the justices of the peace, judicial or otherwise; nonetheless, justices of the peace are appointed as presiding officers of the inquest by virtue of their positions as justices of the peace.

ture to determine the jurisdiction of the justices of the peace. Appellants recognize that the Legislature granted justices of the peace the authority to participate in inquest proceedings in certain circumstances. They assert, however, that certain statutory provisions regarding coroners set forth in NRS Chapter 259 do not apply in counties, like Clark County, where the county coroner is appointed. Respondents and the Nevada ACLU disagree, arguing, in essence, that NRS Chapter 259 should be viewed as authorizing justices of the peace to participate in inquest proceedings regardless of whether the coroner for a particular county is appointed.

"Every county in this State constitutes a coroner's district, except a county where a coroner is appointed pursuant to the provisions of NRS 244.163." NRS 259.010(1). In those counties without an appointed coroner, the sheriff serves as the de facto coroner. NRS 259.020. The Legislature has provided procedures for the sheriff to operate under in conducting an inquest, which includes the use of a justice of the peace:

> If an inquest is to be held, the district attorney shall call upon a justice of the peace of the county to preside over it. The justice of the peace shall summon three persons qualified by law to serve as jurors, to appear before the justice of the peace forthwith at the place where the body is or such other place within the county as may be designated by him or her to inquire into the cause of death.

NRS 259.050(4). The Legislature has alternatively provided that instead of using a sheriff as a coroner, a county may appoint a coroner. NRS 244.163(1). "The boards of county commissioners in their respective counties may create by ordinance the office of the county coroner, prescribe the qualifications and duties of the county coroner and make appointments to the office." *Id.* If a county chooses to create a coroner's office, many of the statutory procedures, including the participation of a justice of the peace, do not apply. *See* NRS 259.010(2) ("The provisions of this chapter, except NRS 259.025 and 259.150 to 259.180, inclusive, do not apply to any county where a coroner is appointed pursuant to the provisions of NRS 244.163."). Clark County has chosen to appoint a coroner and the county has therefore created its own code scheme for inquests. Under the Clark County code, only justices of the peace may serve as the presiding officer for officer-involved death inquest proceedings. *See* CCCO § 2.12.080(c) (providing that in cases involving officer-involved deaths, section 2.12.020(e) controls the selection of the presiding officer); CCCO § 2.12.020(e) (stating that "[i]f the death is an officer involved death, the chief judge from the township where the death occurred shall appoint a qualified magistrate, as defined in Section 2.12.010(l), to sit as the presiding officer in the inquest"); CCCO

§ 2.12.010(l) (defining "[q]ualified magistrate" as "a justice of the peace from any jurisdiction within Clark County who is an attorney duly licensed to practice law in the state of Nevada").

When construing a statute, this court looks to the words in the statute to determine the plain meaning of the statute, and this court will not look beyond the express language unless it is clear that the plain meaning was not intended. *City of Reno v. Bldg. & Constr. Trades*, 127 Nev. 114, 121, 251 P.3d 718, 722 (2011); *see also Berkson v. LePome*, 126 Nev. 492, 497, 245 P.3d 560, 563 (2010) (holding that words in a statute will be given their plain meaning). If the statute is ambiguous, however, this court will "look to the provision's legislative history and the . . . scheme as a whole to determine what the . . . framers intended." *We the People Nevada v. Secretary of State*, 124 Nev. 874, 881, 192 P.3d 1166, 1171 (2008). "Statutory language is ambiguous if it is capable of more than one reasonable interpretation." *In re Candelaria*, 126 Nev. 408, 411, 245 P.3d 518, 520 (2010). This court construes "statutes to preserve harmony among them." *Canarelli v. Dist. Ct.*, 127 Nev. 808, 814, 265 P.3d 673, 677 (2011).

In rejecting appellants' arguments that the code sections providing for the participation of justices of the peace in the inquest process unconstitutionally intrudes on the Legislature's authority, the district court concluded that, even though "NRS 259.050 does not specifically apply to Clark County" because it has an appointed coroner, the statutory language that permits justices of the peace to preside over inquests in some counties indicates that it is permissible for any county, including those with appointed coroners, to have a justice of the peace preside over the inquest process. We disagree.

Here, NRS 259.010(2) plainly provides that in counties with appointed coroners, NRS 259.050 does not apply. And when NRS 250.010(2) and NRS 259.050(4) are read together, *see Canarelli*, 127 Nev. at 814, 265 P.3d at 677 (noting that this court construes "statutes to preserve harmony among them"), these statutes clearly authorize justices of the peace to participate in inquest proceedings only in counties where the county coroner is not appointed. Because Clark County has an appointed coroner, NRS 259.050(4) does not apply, and thus, justices of the peace are not authorized to participate in Clark County inquest proceedings.[7]

---

[7]While NRS 244.163 provides that the board of county commissioners will prescribe the duties of the county coroner, it makes no mention of prescribing the duties of any other actor, including justices of the peace. Thus, nothing in NRS 244.163 can be construed as authorizing the participation of justices of the peace in coroner's inquest proceedings in counties with appointed coroners.

NRS 259.010(2). To conclude otherwise would violate this court's well-established maxim that the expression of one thing is the exclusion of another. *See Galloway v. Truesdell*, 83 Nev. 13, 26, 422 P.2d 237, 246 (1967); *see also State, Dep't of Taxation v. DaimlerChrysler*, 121 Nev. 541, 548, 119 P.3d 135, 139 (2005) (stating that "omissions of subject matters from statutory provisions are presumed to have been intentional").

Because the Nevada Constitution vests the Legislature with exclusive authority to determine the jurisdiction of justices of the peace, *see* Nev. Const. art. 6, § 8, by providing for the participation of justices of the peace in Clark County's inquest proceedings related to officer-involved deaths, the Clark County Board of County Commissioners has unconstitutionally impinged on the Legislature's constitutionally delegated authority. As a result, based on our de novo review of the district court's decision, we conclude that the district court erred in rejecting appellants' declaratory relief claim as to this issue. *See Canarelli*, 127 Nev. at 813, 265 P.3d at 676 (stating that the district court's conclusions of law, including statutory interpretations, are reviewed de novo); *Flamingo Paradise Gaming v. Att'y General*, 125 Nev. 502, 509, 217 P.3d 546, 551 (2009) (stating that this court reviews de novo determinations of whether a statute is constitutional); *Nevadans for Nevada v. Beers*, 122 Nev. 930, 942, 142 P.3d 339, 347 (2006) (providing that in the absence of any factual dispute, this court reviews a district court's decision to grant or deny declaratory and injunctive relief de novo). As we conclude that CCCO § 2.12.010(1) violates Nevada's Constitution by including justices of the peace in inquest proceedings related to officer-involved deaths, we must determine whether the remaining portions of the code may stand.

*The offending coroner's inquest provisions must be severed*

This court has adopted a test for severability, pursuant to which a statute is severable only "if the remaining portion of the statute, standing alone, can be given legal effect, and if the Legislature intended for the remainder of the statute to stay in effect when part of the statute is severed." *Flamingo Paradise Gaming*, 125 Nev. at 514-18, 217 P.3d at 555-57 (addressing the severability of a statute enacted by ballot measure).

By Ordinance 3920, the sections of Chapter 2.12 of the Clark County code at issue in this case were amended. Although the actual ordinance contained a severability clause, no such clause was

codified or included in Chapter 2.12 of the code. In Nevada counties, ordinances are passed by bill. NRS 244.095. When an ordinance is amended, each section of the previously existing ordinance is replaced by the corresponding section of the newly enacted ordinance. *Id.* Additionally, when a county codifies its ordinances into a county code, the ordinances are to be arranged in chapters and sections. NRS 244.116(2). In Clark County, the general ordinances of the county have been codified and are published together as the Clark County, Nevada, Code of Ordinances. CCCO § 1.01.010; *see* NRS 244.116 (permitting each Nevada county's board of commissioners to provide for the codification and publication of the county's general ordinances in a county code). Thus, although the severance clause is contained in the ordinance enacted by the board of county commissioners, but has not been codified in the county code, we will nonetheless consider the severance clause in determining whether an unconstitutional portion of the code enacted by that ordinance can be severed. *Cf. Picetti v. State,* 124 Nev. 782, 793-94, 192 P.3d 704, 712 (2008) (considering the effective date of a bill, which was not codified in the resulting statute, in order to determine whether the Legislature intended for the bill to apply retroactively).

It appears from the inclusion of the severability clause, as Section 13 of Ordinance 3920, that the Clark County Board of County Commissioners intended for the remainder of the code sections amended by Ordinance 3920 to stay in effect if any part of the code amended by that ordinance was struck down as unconstitutional. Here, the only language providing for justices of the peace to serve in the inquest process is CCCO § 2.12.010(l), which defines "qualified magistrate" as "a justice of the peace from any jurisdiction within Clark County who is an attorney duly licensed to practice law in the state of Nevada." For cases regarding officer-involved deaths, however, the code provides no alternative to justices of the peace serving as presiding officers. Notably, under CCCO §§ 2.12.080(c) and 2.12.020(e), a qualified magistrate— which must be a justice of the peace under CCCO § 2.12.010(l)— must be appointed to serve as presiding officer in inquests investigating officer-involved deaths. Thus, striking down only CCCO § 2.12.010(l) would render the entire inquest scheme for officer-involved deaths ineffective, as such proceedings could not go forward without a presiding officer. We therefore conclude that the remaining portions of the officer-involved inquest scheme cannot, standing alone, be given legal effect and, as a result, the entire inquest scheme for officer-involved deaths necessarily must be struck down. *Flamingo Paradise Gaming,* 125 Nev. at 514-18, 217 P.3d at 555-57.

## CONCLUSION

The Clark County, Nevada, Code of Ordinances provisions establishing and setting forth the inquest procedures for officer-involved deaths do not implicate appellants' due process rights. We conclude, however, that to the extent that the code provisions pertaining to inquest proceedings regarding officer-involved deaths require that the presiding officer be a justice of the peace, these provisions unconstitutionally intrude upon the Legislature's exclusive constitutional authority to determine the jurisdiction of justices of the peace. And because, in the case of officer-involved deaths, the code makes no provision for anyone except a justice of the peace to serve as presiding officer, we conclude that the entire inquest scheme for officer-involved deaths necessarily fails.[8] Accordingly, we reverse the district court's decision.[9]

CHERRY, C.J., and DOUGLAS, SAITTA, GIBBONS, PICKERING, and PARRAGUIRRE, JJ., concur.

---

[8]Based on our resolution of this matter, it is not necessary to address the parties' remaining appellate arguments.

[9]We vacate the stay of the coroner's inquest proceedings imposed by our May 10, 2012, order.