134 Nev., Advance Opinion 85

# IN THE SUPREME COURT OF THE STATE OF NEVADA

KOFI SARFO, M.D.,
Appellant,
vs.
STATE OF NEVADA, BOARD OF
MEDICAL EXAMINERS,
Respondent.

No. 73117

**FILED**

NOV 01 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order denying a motion for preliminary injunction in an administrative agency matter. Eighth Judicial District Court, Clark County; Michael Villani, Judge.

*Affirmed.*

Hafter Law and Jacob L. Hafter, Las Vegas,[1]
for Appellant.

Robison, Sharp, Sullivan & Brust and Michael E. Sullivan and Therese M. Shanks, Reno,
for Respondent.

BEFORE PICKERING, GIBBONS and HARDESTY, JJ.

---

[1]This court is aware that appellant's attorney was suspended and has since passed away. Since a disposition in this matter has already been filed, and this opinion is being issued in response to a motion to publish, this court need not address the failure of the parties to give notice to this court following his death.

18-42843

By the Court, HARDESTY, J.:

In this appeal, we must determine whether a physician's due process rights attach at the investigation stage of a complaint made to the Nevada State Board of Medical Examiners (the Board). When a complaint against a physician is filed with the Board, a committee of Board members investigates the complaint. Because NRS 630.352(1) prevents members in the investigative committee from later participating in adjudicating claims stemming from the investigation, we extend the holding in *Hernandez v. Bennett-Haron*, 128 Nev. 580, 287 P.3d 305 (2012), and conclude that a physician's due process rights do not attach to the administrative agency's fact-finding role.

## FACTS AND PROCEDURAL HISTORY

Appellant Kofi Sarfo, M.D., received a letter from respondent Nevada State Board of Medical Examiners (the Board) informing him that a complaint had been filed against him. The Board did not identify the complainant or specify the claims, only noting that it would not determine whether there had been a violation of the Medical Practice Act until it completed its investigation. The letter accompanied an order for Dr. Sarfo to produce medical records for several of his patients to enable the Board's investigative committee (IC) to investigate the complaint filed against Dr. Sarfo. Dr. Sarfo refused to comply. He then filed a writ petition and a motion for injunctive relief in the district court, arguing that the Board

---

[2]We originally affirmed in an unpublished order. Respondent has moved to publish the order as an opinion. We grant the motion and publish this opinion in place of our earlier order. *See* NRAP 36(f).

 

violated his due process rights by keeping the actual complaint and identity of the complainant confidential.

The district court denied Dr. Sarfo's request for injunctive relief, concluding that his due process rights were not violated, and thus, his underlying petition could not succeed on the merits. The district court found that under NRS 630.140(1), NRS 630.311(1), and NRS 630.336(4), the Board "is empowered to issue the order of which Dr. Sarfo complains, the investigation itself is confidential, and the Board is prohibited from disclosing to Dr. Sarfo the identity of the person who filed the complaint, or the actual complaint disclosing such." In issuing this order, the district court relied on *Hernandez v. Bennett-Haron*, 128 Nev. 580, 287 P.3d 305 (2012), to find that the IC's investigation did not invoke due process protections because the IC "has no authority to adjudicate any legal rights," since it is only "tasked with gathering facts and investigating whether there is any merit to a complaint filed with the Board against a physician." The Board then moved for attorney fees and costs, which the district court granted.

Dr. Sarfo now appeals the district court order, arguing that (1) the Board's investigative procedures violate his due process rights, (2) the Board improperly interprets NRS 630.336(4) to allow the Board to refuse to disclose the actual complaint and complainant, and (3) the district court abused its discretion in awarding the Board attorney fees and costs.

## DISCUSSION

*The district court did not abuse its discretion in denying Dr. Sarfo's motion for a preliminary injunction*

A district court may issue a preliminary injunction if the plaintiff can show "(1) a likelihood of success on the merits; and (2) a reasonable probability that the non-moving party's conduct, if allowed to

 

continue, will cause irreparable harm for which compensatory damage is an inadequate remedy." *Univ. & Cmty. Coll. Sys. of Nev. v. Nevadans for Sound Gov't*, 120 Nev. 712, 721, 100 P.3d 179, 187 (2004) (internal quotation marks omitted). "Determining whether to grant or deny a preliminary injunction is within the district court's sound discretion . . . , and the district court's decision will not be disturbed absent an abuse of discretion or unless it is based on an erroneous legal standard." *Id.*

Dr. Sarfo first argues the merits of his underlying petition, contending that physicians must have due process protections during the discipline process. Dr. Sarfo argues that his interest in practicing medicine is a property right in Nevada, and that the Board's procedures were not constitutionally sufficient because keeping the complaint and complainant confidential fails to provide adequate notice and a meaningful opportunity to respond. Further, Dr. Sarfo argues that because the IC also prosecutes administrative discipline cases brought before the Board, its functions exceed mere fact-finding and are an extension of the adjudication process.

The Board argues that the district court did not abuse its discretion in denying Dr. Sarfo's motion for preliminary injunction because Dr. Sarfo cannot prevail on the merits of his underlying petition. Specifically, the Board argues that due process has not been implicated because there is no property interest at stake during the preliminary investigation, due process does not attach to the fact-finding portion of the investigation, and the Board is statutorily prohibited from providing Dr. Sarfo with a copy of the complaint. The Board further argues that Dr. Sarfo's motion was properly denied since he cannot show irreparable harm resulting from the IC's order to produce records, because irreparable harm does not exist when there is no actual or threatened injury and merely the



possibility of an injury. Lastly, the Board argues that the public interest in regulating medical professionals and protecting the public from potentially unsafe or incompetent practitioners outweighs any potential harm to Dr. Sarfo.

There are two types of complaints that come before the Board: a complaint initially generated by a member of the public and a formal complaint generated by the IC following the completion of its investigation. *See* NRS 630.311. Upon receipt of the initial complaint filed by a member of the public against a physician, the Board must designate an IC to "review each complaint and conduct an investigation to determine if there is a reasonable basis for the complaint." NRS 630.311(1). The IC has no disciplinary powers and can only file a formal complaint with the Board if it concludes that a complaint from a member of the public has a reasonable basis. NRS 630.311(2). Once a formal complaint has been filed, the adjudicative process begins, and the physician is provided with notice and an opportunity to be heard at a formal hearing. *See* NRS 630.339. Here, Dr. Sarfo is alleging a due process violation stemming from an initial complaint, not a formal complaint.

The Nevada Constitution requires that "[n]o person shall be deprived of life, liberty, or property, without due process of law." Nev. Const. art. 1, § 8(5). The district court, relying on *Hernandez v. Bennett-Haron*, 128 Nev. 580, 287 P.3d 305 (2012), found that Dr. Sarfo could not prevail on the merits because due process was not implicated in this matter, as the IC was merely performing investigatory fact-finding with no power to deprive Dr. Sarfo of his liberty interest. In *Hernandez*, we determined that the county coroner's fact-finding investigation of whether police officers used excessive force did not implicate due process rights because the county

coroner was only tasked with fact-finding and not with adjudicating formal disciplinary proceedings. 128 Nev. at 591-93, 287 P.3d at 313-14. In fact, due process protections "need not be made available in proceedings that merely involve fact-finding or investigatory exercises by the government agency." *Id.* at 587, 287 P.3d at 311 (citing *Hannah v. Larche*, 363 U.S. 420, 442 (1960)). Here, the IC is tasked with "conduct[ing] an investigation to determine if there is a reasonable basis for the complaint." NRS 630.311(1).

Dr. Sarfo challenges the district court's application of *Hernandez*, contending that the IC is distinguishable from a county coroner because the IC, unlike the county coroner, is able to file a formal complaint with the Board. However, NRS 630.352(1) mitigates the due process danger of an entity serving in both an investigatory and adjudicatory role, stating that

> [a]ny member of the Board, *other than a member of an investigative committee of the Board who participated in any determination regarding a formal complaint in the matter* or any member serving on a panel of the Board at the hearing of the matter, may participate in an adjudication to obtain the final order of the Board.

Thus, the IC fact-finders are statutorily prohibited from participating in the adjudication of any subsequent formal complaint. Extending our holding in *Hernandez* to an administrative agency engaged solely in an investigation role is in accordance with the law across the country that recognizes the distinction between an agency's fact-finding and adjudicatory roles. *See, e.g., United States v. E. River Hous. Corp.*, 90 F. Supp. 3d 118, 136-37 (S.D.N.Y. 2015) (holding that due process rights do not attach during a Housing and Urban Development Department discrimination investigation, but do attach if the agency initiates a formal adjudicatory proceeding); *S.E.C. v. OKC Corp.*, 474 F. Supp. 1031, 1041 (N.D. Tex. 1979)

 

(holding that due process protections do not attach during an SEC investigation, but may be implicated by the SEC's filing of a complaint); *Alexander D. v. State Bd. of Dental Exam'rs*, 282 Cal. Rptr. 201, 204-05 (Ct. App. 1991) (holding that a dentist's due process rights do not attach during the California Board of Dental Examiner's investigation of a complaint against the dentist); *Smith v. Bd. of Med. Quality Assurance*, 248 Cal. Rptr. 704, 710 (Ct. App. 1988) (holding that a physician's due process rights do not attach during the California Board of Medical Quality Assurance's investigation of a complaint); *In re Petition of Att'y Gen. for Investigative Subpoenas*, 736 N.W.2d 594, 602 (Mich. Ct. App. 2007) (holding that subpoenas issued pursuant to the department of Public Health's investigation do not implicate due process unless and until the department files a formal complaint); *Humenansky v. Minn. Bd. of Med. Exam'rs*, 525 N.W.2d 559, 566 (Minn. Ct. App. 1994) (holding that due process does not attach during the investigatory proceedings of the Minnesota Board of Medical Examiners).

Accordingly, we conclude that the district court appropriately applied *Hernandez* to find that the IC's investigation did not require due process protection because it did not also adjudicate the complaint. An agency or board being tasked merely with investigatory fact-finding and filing a formal complaint, which they are then statutorily prohibited from later adjudicating themselves, does not implicate procedural due process protections. As such, Dr. Sarfo has failed to show how he would be irreparably harmed at this investigatory stage of the administrative process.

Because the district court correctly found that Dr. Sarfo could not prevail on the merits because no due process rights were implicated and

Dr. Sarfo has failed to show irreparable harm, we conclude that the district court did not abuse its discretion in denying Dr. Sarfo's motion for a preliminary injunction. *Univ. & Cmty. Coll. Sys. of Nev. v. Nevadans for Sound Gov't*, 120 Nev. 712, 721, 100 P.3d 179, 187 (2004).

*The Board's interpretation of NRS 630.336 is reasonable and within the plain language of the statute*

Dr. Sarfo next argues that the Board incorrectly interprets the statute to mean that the complaint and complainant may be kept confidential from the licensee. NRS 630.336(4) states:

> Except as otherwise provided in subsection 5 and NRS 239.0115, a complaint filed with the Board pursuant to NRS 630.307, all documents and other information filed with the complaint and all documents and other information compiled as a result of an investigation conducted to determine whether to initiate disciplinary action are confidential.

Dr. Sarfo argues that this statute should be interpreted to mean that all documents related to the investigation should be kept confidential from non-related parties only, because the statute is meant to protect licensees from reputational damage from baseless complaints. He supports this position by pointing to the legislative history where the statute was amended to make only formal complaints public to prevent frivolous complaints from becoming public record. Dr. Sarfo also draws a comparison to judicial discipline proceedings, which require confidentiality with regard to the public rather than the target of the proceedings.

The Board argues that keeping the complaint and complainant confidential from the licensee is a reasonable interpretation of the statute. The Board further argues that if it is required to disclose the identity of the complainant to the licensee, members of the public would be more hesitant

to file complaints against their doctors, which would undermine the Board's duty to regulate the medical profession.

We review questions of statutory interpretation de novo. *Dykema v. Del Webb Cmtys., Inc.*, 132 Nev., Adv. Op. 82, 385 P.3d 977, 979 (2016). "[W]hen the language of a statute is plain and unambiguous, and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself." *Id.* (internal quotation marks omitted). We will "nonetheless defer to an agency's interpretation of its governing statutes or regulations if the interpretation is within the language of the statute." *Dutchess Bus. Servs., Inc. v. Nev. State Bd. of Pharmacy*, 124 Nev. 701, 709, 191 P.3d 1159, 1165 (2008).

We conclude that NRS 630.336(4) is unambiguous and that the Board's interpretation falls "within the [plain] language of the statute." *Id.* The statute requires that complaints and complainants be kept confidential. Dr. Sarfo's argument appears to be that the Board is keeping the investigation more confidential than he believes the statute requires. However, nothing in the statute says that the complaint and complainant must be disclosed to the licensee in the investigatory phase. Keeping the complaint fully confidential, even from the licensee, is a reasonable interpretation of the statute's plain language. Additionally, the record demonstrates that Dr. Sarfo indicated in his declaration that he questioned all five of his patients, whose records were requested by the Board, to determine which one filed the complaint. This supports the Board's basis for its interpretation of the statute—that disclosing the complaint and complainant may make patients hesitant to report malpractice without the protection of confidentiality.

*We lack jurisdiction to consider the district court's order awarding attorney fees and costs to the Board*

Dr. Sarfo argues that the district court abused its discretion in awarding attorney fees and costs to the Board. The Board first argues that the district court's award of attorney fees and costs is not properly before this court because Dr. Sarfo is required to separately appeal such an order. The district court's order denying the preliminary injunction was entered on May 12, 2017, and Dr. Sarfo filed his notice of appeal on May 25, 2017. The district court's order awarding attorney fees and costs was not entered until November 15, 2017, and no separate notice of appeal or amended notice of appeal of that order has been filed. We therefore lack jurisdiction to entertain Dr. Sarfo's arguments regarding the attorney fees order.[3] *See* NRAP 3(a)(1); NRAP 4(a)(1).

Accordingly, for the reasons set forth above, we affirm. However, on the issue of attorney fees and costs, we conclude that we lack jurisdiction to consider Dr. Sarfo's arguments regarding the special order.

_____, J.
Hardesty

We concur:

_____, J.
Pickering

_____, J.
Gibbons

---

[3]We make no determination concerning the substantive appealability of the interlocutory attorney fees order when no final judgment has been entered.